UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Monocoque Diversified Interests, LLC,

Plaintiff,

v.

Aquila Air Capital (Ireland) DAC,

Defendant.

Civil Action No. 1:22-cv-10015

**JURY TRIAL DEMANDED**

**PLAINTIFF'S VERIFIED COMPLAINT FOR A PRELIMINARY INJUNCTION AND OTHER RELIEF**

Plaintiff Monocoque Diversified Interests, LLC, ("MDI"), by and through its undersigned counsel, brings this complaint against defendant Aquila Air Capital (Ireland) DAC ("Aquila") as follows:

## NATURE OF THE ACTION

1. MDI brings this action for injunctive and other relief arising out of Aquila's brazen violation of its contractual obligations to MDI. MDI seeks an order enjoining Aquila from continuing to improperly deny, delay or otherwise interfere with MDI's immediate exercise of its contractual right to audit Aquila's books and records, and enjoining Aquila from improperly interfering with MDI's business relationships, which actions have been undertaken by Aquila in direct violation of its contractual obligations to MDI. MDI additionally seeks declaratory relief and the recovery of damages sustained as a result of Aquila's breaches of the services agreement between the parties.

## PARTIES

2. Plaintiff Monocoque Diversified Interests, LLC is a limited liability company organized under the laws of Texas with its principal place of business at 100 Congress Avenue, Suite 1750, Austin, Texas 78701.

3. Upon information and belief, Defendant Aquila Air Capital (Ireland) DAC is a foreign entity organized under the laws of Ireland with its principal place of business in Dublin, Ireland.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between MDI and Aquila, and the amount in controversy exceeds $75,000. In addition, the Court has authority to adjudicate MDI's claims for declaratory relief pursuant to 28 U.S.C §§ 2201, 2202.

5. The Court has personal jurisdiction over Aquila pursuant to the Services Agreement, wherein the parties expressly consented to the exclusive jurisdiction of the federal and state courts located in the City of New York, Borough of Manhattan, for disputes arising under the Services Agreement.

6. Venue in this judicial District is proper pursuant to the Services Agreement, which provides for venue in the federal or state courts located in the City of New York, Borough of Manhattan.

## FACTUAL BACKGROUND

### The Services Agreement

7. MDI is a boutique company, which serves as a consultant with expertise in advising companies in the acquisition, leasing, and disposition of aircraft, aircraft engines and

other aircraft assets, as well as expertise in managing aircraft, aircraft engines and other aircraft assets for companies and provides equipment technical services.

8. Upon information and belief, Aquila is a special purpose entity, created by a multi-billion-dollar private equity group to engage in the business of acquiring, selling, and leasing aircraft, aircraft engines and other aircraft assets, with plans to build a portfolio of aircraft assets worth more than $100 million USD.

9. On August 25, 2021, Aquila engaged MDI pursuant to the terms of a Services Agreement to provide consulting expertise regarding the acquisition and management of up to eleven (11) airframes, up to twenty-four (24) aircraft engines, and a Residco Engine, with all such equipment ultimately acquired by Aquila collectively referred to as the “Equipment” in the Services Agreement. A copy of the August 25, 2021 Services Agreement is attached hereto as **Exhibit A** (“Services Agreement”).

10. Following execution of the Services Agreement, MDI identified additional equipment for Aquila to acquire, and the parties executed two addenda to the Services Agreement (and three further addenda as well, the terms of which are subject to ongoing dispute) to expand the list of Equipment originated by MDI for acquisition by Aquila for which MDI is entitled to earn fees and other compensation.

11. Pursuant to the Services Agreement, MDI is entitled to an Origination Fee in the amount of 3.5% of the gross acquisition price of Equipment identified for acquisition by MDI, and for which MDI negotiated the opportunity for the acquisition. *See* Services Agreement (Exhibit A), ¶ 3(a).

12. Pursuant to the Services Agreement, MDI is entitled to a Profit Participation Percentage equal to 1% "in respect of the Company," as defined in the Services Agreement. *See* Services Agreement (Exhibit A), ¶ 3(a).

13. Pursuant to the Services Agreement, MDI is entitled to a monthly Consultancy Fee in the amount of $2,500 per Airframe and $5,000 per Engine (as those terms are defined in the Services Agreement) in consideration for certain services performed by MDI related to such equipment. *See* Services Agreement (Exhibit A), ¶ 3(b).

14. Pursuant to the Services Agreement, MDI is entitled to a Monetization Fee from the sales proceeds of Airframes and Engines equal to 2.5% of the net sale price of such equipment. *See* Services Agreement (Exhibit A), ¶ 3(c).

15. Pursuant to the Services Agreement, MDI is entitled to an Airframe/Engine Set Up Fee and Advance in varying amounts based upon Aquila's acquisition of certain Equipment. *See* Services Agreement (Exhibit A), ¶ 3(c).

16. As a result of the fee structure set forth in the Services Agreement, the amounts owed to MDI cannot be fully and accurately ascertained without access to financial records maintained by Aquila detailing, among other things, the Equipment acquired and the liabilities, expenses, proceeds, and net profit realized by Aquila related to such Equipment. Accordingly, Aquila is required under the Services Agreement to provide MDI with certain financial records on a quarterly and annual basis. *See* Services Agreement (Exhibit A), ¶ 3(c).

17. Despite Aquila's obligations to maintain and furnish certain financial records, on or about August 5, 2022, Aquila admitted during a status conference that it does not track revenue and expenses "in respect of the Equipment," rendering Aquila unable to provide the full financial disclosures required by the Services Agreement.

18. Crucially, the Services Agreement also provides MDI the right once per calendar year to audit the books and records of Aquila "in respect of the Equipment at [MDI's] sole cost and expense." *See* Services Agreement (Exhibit A), ¶ 3(a). MDI's audit rights were specifically included in the Services Agreement to allow MDI to determine and verify amounts MDI is owed for services rendered, and to ensure Aquila's proper performance of its obligations under the Services Agreement, including Aquila's obligations to not improperly use MDI's confidential information or interfere with or solicit MDI's business relationships and business partners. *See* Services Agreement (Exhibit A), ¶6(b).

**Aquila Terminates the Services Agreement and**
**Improperly Denies MDI's Exercise of Audit Rights**

19. By letter dated August 15, 2022, Aquila provided MDI with 60-days' notice of Aquila's intent to terminate the Services Agreement without cause. *See* August 15, 2022 Letter attached hereto as **Exhibit B**. Pursuant to Aquila's August 15, 2022 letter, and in accordance with the notice provisions of the Services Agreement, Aquila's termination of the Services Agreement was to become effective on October 14, 2022.

20. On October 12, 2022, two days before the effective date of termination of the Services Agreement, MDI provided Aquila with notice that MDI was exercising its right to audit Aquila's books and records in accordance with the Services Agreement, and that MDI had engaged the services of Weaver, a nationally recognized accounting firm to conduct the audit, along with information describing Weaver's capabilities, qualifications and expertise. *See* October 12, 2022 Letter attached hereto as **Exhibit C**.

21. By letter dated October 14, 2022, counsel for Aquila rejected, without justification or explanation, MDI's selection and engagement of Weaver to conduct the audit.

*See* October 14, 2022 Letter attached hereto as **Exhibit D**. Despite MDI being solely responsible for the costs associated with conducting the audit, Aquila, through counsel, stated that it would only agree to an audit being conducted by KPMG, Ernst & Young, PwC, or Deloitte. *See id.*

22. In addition, through counsel's October 14, 2022 letter, Aquila improperly objected to the scope of the audit noticed by MDI, contending that the proposed scope went "way beyond the audit contemplated by the Services Agreement." *See id.* Contrary to Aquila's contention, the Services Agreement does not limit or otherwise qualify the scope of the audit MDI is entitled to. *See* Services Agreement, Exhibit A, ¶ 3(a).

23. On October 19, 2022, in accordance with MDI's notice to Aquila, a representative of Weaver contacted Aquila's Chief Executive Officer to commence the noticed audit. Despite Weaver's substantial expertise and capabilities, Weaver's representative was not permitted to commence the audit and was informed by Aquila's Chief Executive Officer that Aquila had rejected MDI's audit. *See* Affidavit of Victor Padilla, attached hereto as **Exhibit E**.

24. Aquila unreasonably and unjustifiably rejected MDI's selected auditor and the scope of MDI's audit to intentionally deprive MDI of its contractually guaranteed audit rights for the purpose of avoiding Aquila's payment obligations under the Services Agreement.

25. Although Aquila improperly rejected MDI's selected auditor and conditioned the audit on MDI's engagement of one of four big accounting firms, MDI, in good faith, contacted each of the accounting firms enumerated by Aquila to inquire about potential engagement. Each of the four accounting firms stipulated by Aquila either declined to conduct the audit or failed to respond to MDI's inquiries, rendering MDI unable to conduct the audit under the conditions unilaterally imposed by Aquila in contravention of the Services Agreement.

26. Aquila's denial and delay of, and interference with, MDI's right to conduct an audit of Aquila's books and records has caused, and will continue to cause, immediate and irreparable harm to MDI. Aquila has admitted that it fails to properly track revenue and expenses associated with the Equipment, and Aquila's continuing disposition of Equipment originated by MDI will irreparably deprive MDI of the ability to ascertain the full compensation it is owed under the Services Agreement.

**Aquila Breaches its Payment Obligations Under the Services Agreement**

27. In addition to depriving MDI of its audit rights, and thereby threatening to irreparably impair MDI's ability to ascertain fees and other compensation due and owing from Aquila, Aquila has explicitly breached its payment obligations to MDI. By letter dated October 24, 2022, Aquila, through counsel, stated that it would not make any further payments to MDI pursuant to the Services Agreement. *See* October 24, 2022 Letter attached hereto as **Exhibit F**. At the time Aquila's counsel sent such correspondence, substantial payment obligations that had accrued during the term of the Services Agreement remained due and owing to MDI.

28. Pursuant to counsel's October 24, 2022 letter, Aquila further denied MDI's entitlement to any post-termination rights under the Services Agreement, including MDI's entitlement to Origination Fees, Monetization Fees, Profit Participation Percentages, Consultancy Fees, and annual audit rights following termination of the Services Agreement. *See* October 24, 2022 Letter, Exhibit F.

29. Aquila's termination of the Services Agreement without cause did not extinguish Aquila's obligation to timely and fully pay amounts that accrued during the term of the Services Agreement. Pursuant to Section 2(b)(iii) of the Services Agreement, following termination without cause, Aquila "remain[s] liable and shall timely and fully pay to [MDI] when due all

Origination Fees that would have otherwise been due under Section 3(a), all Airframe/Engine Set Up Fees that would have otherwise been due under Section 3(d) and all Approved Expenses due under Section 3(f) for any Equipment." Further, Section 2(c) of the Services Agreement provides that upon the effective date of termination of the Agreement, "all legal obligations, rights and duties arising out of the Services Agreement, including without limitations any fees and expenses incurred after the effective date of termination, shall terminate *except for such legal obligations, rights and duties as shall have accrued prior to the effective date of termination* . . .." Services Agreement, Exhibit A, ¶ 2(c) (emphasis added).

30. As of the present date, based on amounts invoiced to Aquila, over $3.4 million in accrued fees are due and owing to MDI for services rendered pursuant to the Services Agreement. The full amount owed to MDI cannot be determined or verified without an audit of Aquila's books and records, which MDI is contractually guaranteed under the Services Agreement. Upon information and belief, an audit of Aquila's books and records will also establish substantial additional amounts owed by Aquila to MDI.

**Aquila Improperly Interferes with MDI's Business Relationships**

31. The Services Agreement provides that during its term and for a period of one year thereafter, "neither party shall use any Confidential Information to solicit or otherwise provide services to a customer or financial partner of the other party, that are in competition with the services provided by either party . . .." *See* Services Agreement, Exhibit A, ¶ 6(b). The Service Agreement further provides that "each party agrees an acknowledges that the other party would suffer substantial damage if either party was to interfere with any relationships with its clients, financial partners or employees, and that it would be extremely difficult or impracticable to ascertain the actual amount of damages to either party if a Customer were to divert either party's

business opportunities or to employ one of the other party's employees in violation hereof." *See id.*

32. MDI has learned that Aquila has improperly interfered with MDI's relationships with third parties in violation of Aquila's contractual restrictions. On or about October 13, 2022, because of Aquila's disclosure of cash disbursements to an MDI business partner, MDI discovered that Aquila was using MDI's confidential information, including financial information, the identity of key contacts, and the terms of prior business dealings, to solicit business directly from MDI's business partners.

33. Aquila's improper solicitation of and interference with MDI's business partners and business relationships has damaged MDI and impaired MDI's ability to transact business with them. Aquila's actions in diverting business away from MDI have resulted in lost business opportunities and goodwill. Moreover, Aquila's actions have been undertaken to unfairly gain a competitive advantage in the market by exploiting MDI's confidential information, goodwill and/or relationships, and depriving MDI of the benefit of its investment in business relationships that are key to MDI's market-leading services.

## COUNT I
## Breach of Contract

34. MDI incorporates all preceding paragraphs of the Complaint as if fully set forth herein.

35. The Services Agreement constitutes a valid and enforceable contract.

36. MDI has performed under the Service Agreement and satisfied all relevant obligations thereunder.

37. Aquila's actions, as set forth herein, constitute a breach of the Services Agreement.

38. Specifically, Aquila's improper denial and delay of, and interference with, MDI's contractual right to audit Aquila's books and records violates Aquila's obligations set forth in the Services Agreement and has caused, and will continue to cause, immediate and irreparable harm to MDI.

39. In addition, by refusing to make any further payments in accordance with the terms of the Services Agreement, Aquila has breached its express payment obligations thereunder.

40. Further, Aquila's solicitation of and interference with MDI's business partners violates the restrictions set forth in the Services Agreement that are reasonably necessary to protect MDI's legitimate business interests.

41. Aquila has violated the Services Agreement to the detriment of MDI.

42. If Aquila's wrongful conduct is permitted to continue, MDI will continue to suffer substantial and irreparable injury to its business. MDI is entitled to injunctive relief enjoining Aquila from unlawfully denying MDI access to the books and records necessary to fully determine Aquila's payment obligations and enjoining Aquila from unlawfully interfering with MDI's business relationships.

43. MDI has also suffered direct and consequential damages and is entitled to recover compensatory and other damages in an amount to be proven at trial.

**COUNT II**
**Declaratory Judgment**

44. MDI incorporates all preceding paragraphs of the Complaint as if fully set forth herein.

45. The Services Agreement requires the performance of certain obligations by Aquila post-termination and guarantees MDI's continued entitlement to accrued rights following termination of the Services Agreement.

46. Aquila has asserted that its obligations and MDI's rights under the Services Agreement were extinguished as of the effective date of termination of the Services Agreement.

47. An actual controversy and live dispute exists between the parties regarding their respective post-termination rights and obligations under the Services Agreement, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Monocoque Diversified Interests, LLC, prays as follows:

a) That Defendant be enjoined from delaying, denying, or otherwise interfering with MDI's right to immediately conduct an audit of Aquila's books and records;

b) That Defendant be enjoined from improperly interfering with MDI's business relationships and/or soliciting MDI's business partners, including by diverting or attempting to divert from MDI any business of any kind related to the Equipment, including but not limited to the solicitation of or interference with MDI's suppliers, engine vendors, lessees, or customers;

c) That MDI be awarded actual, consequential, and other compensatory damages for losses caused by Defendant's breaches of the Services Agreement;

d) That the Court enter a declaratory judgment that MDI is entitled to certain post-termination rights and payments pursuant to the Services Agreement, including accrued Origination Fees, Monetization Fees, Consultancy Fees, Profit Participation Percentages, and annual audit rights; and

e) That MDI be granted its costs of suit together with reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and such other and further relief as the Court deems appropriate.

Dated: November 23, 2022

Respectfully submitted,

By: *__/s/ Paul Erian__________*

Paul D. Erian
Squire Patton Boggs (US) LLP
1211 Avenue of the Americas, 26th Fl.
New York, NY 10036
Tel. 212-872-9800
Fax 212-872-9815
paul.erian@squirepb.com

Sheldon E. Richie
Katherine J. Walters
Grover C. Peters
RICHIE & GUERINGER, P.C.
100 Congress Avenue, Ste. 1750
Austin, TX 78701
Tel. 512-236-9220
Fax 512-236-9230
srichie@rg-austin.com
kwalters@rg-austin.com
gcpeters@rg-austin.com

(*Pro hac vice applications forthcoming*)

*Attorneys for Plaintiff*

**VERIFICATION**

I am the Manager and a Member of Monocoque Diversified Interests, LLC ("MDI"), and I am authorized to make this verification on behalf of Plaintiff MDI. I have read the foregoing Verified Complaint, I am familiar with the matters and things alleged herein, and to the best of my knowledge and belief, the facts stated, and the allegations contained therein are true.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and corrected.

Executed this 23rd day of November, 2022

Mary Alice Keys

STATE OF TEXAS )
)
COUNTY OF TRAVIS )

SWORN TO AND SUBSCRIBED before me on the 23rd day of November, 2022.

Sarah J. Walters
Notary Public, State of Texas
Comm. Expires 08/04/2025
Notary ID 12541299-0

Notary Public, State of Texas