UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MONOCOQUE DIVERSIFIED INTERESTS, LLC,

                Plaintiff,

-against-

AQUILA AIR CAPITAL (IRELAND) DAC,

                Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  3/24/2023
```

22-cv-10015 (MKV)

TEMPORARY RESTRAINING ORDER

MARY KAY VYSKOCIL, United States District Judge:

On the record at a hearing on March 20, 2023, the Court GRANTED the motion of Defendant and Counterclaim Plaintiff Aquila Air Capital (Ireland) DAC ("Aquila") for a temporary restraining order directing Plaintiff and Counterclaim Defendant Monocoque Diversified Interests, LLC ("MDI") to restore Aquila's access to records that MDI admits Aquila is entitled to access. For the completeness of the record, and pursuant to Rule 65 of the Federal Rules of Civil Procedure, this Order memorializes some of the Court's findings of fact and conclusions of law, as well as the nature of the relief the Court ordered on the record at the March 20, 2023 hearing on Aquila's motion.

I.     BACKGROUND

The Court assumes familiarity with the background of this case, which the Court described in an Opinion & Order dated March 17, 2023 [ECF No. 58 ("Op.")]. Monocoque Diversified Interests, LLC ("MDI") is a consulting firm in the aviation business. Op. at 1. Aquila Air Capital (Ireland) DAC ("Aquila") buys and leases airplanes and engines. Op. at 1.

Aquila hired MDI as a consultant pursuant to the Services Agreement [ECF No. 48-8 ("Services Agreement")]. Aquila later terminated the relationship, as permitted under the terms of

1

the Services Agreement.  *See* Op. at 3.  MDI initiated this case by filing a complaint, alleging breaches of the Services Agreement, and a motion for a preliminary injunction, seeking broad preliminary relief [ECF Nos. 1, 4, 5].  After allowing expedited discovery and conducting an evidentiary hearing, the Court denied MDI's motion.

While MDI's motion for a preliminary injunction was pending, Aquila filed counterclaims against MDI for: (1) breach of the Services Agreement, (2) tortious interference with prospective economic advantage, and (3) conversion [ECF No. 45 ("Amended Ans.")].  Aquila alleges that, during its relationship with MDI, Aquila acquired certain engines, along with "vital historical repair records" about those engines.  Amended Ans. ¶ 21.  MDI kept Aquila's records at a storage facility in Austin, Texas run by "Iron Mountain."  Amended Ans. ¶ 23.  Aquila alleges that it had access to the records at Iron Mountain, but, after Aquila terminated the relationship with MDI, MDI "intentionally retained control of" and "removed Aquila's access rights" to the records.  Amended Ans. ¶¶ 23, 32.

Aquila filed a motion for a temporary restraining order directing MDI to restore Aquila's access to the records [ECF Nos. 46, 47, 48].  Aquila offered evidence that MDI had acknowledged that the records belong to Aquila and had promised to restore Aquila's access to the records if Aquila paid certain fees in connection with the records.  Specifically, in an email exchange on February 22, 2023, counsel for MDI stated: "Why not just agree to the expense and get *your* records?" [ECF No. 48-2 ("February 22, 2023 Email Exchange") at 1 (emphasis added)].  In a letter dated February 27, 2023, counsel for MDI wrote that he could "assure delivery of the 4 boxes of documents [to Aquila] when Aquila pays the outstanding invoices to Iron Mountain in the amount of $2,113.40 and payment to MDI at the rate of $250 per hour, for its time in reviewing the boxes to assure that only Aquila records are in those boxes, preparing the boxes for shipment

and shipping the boxes to Aquila" [ECF No. 48-1 ("February 27, 2023 Letter") at 2]. Aquila agreed to pay what MDI demanded. However, then, MDI informed Aquila that MDI would not release the records unless and until Aquila placed in an escrow account more than $400,000 for payments *unrelated to the records* that MDI claims Aquila owes, plus $4,520 for MDI's legal fees [ECF No. 48-4 ("March 8, 2023 Letter") at 3].

On March 20, 2023, the Court held a hearing on the motion of for a temporary restraining order [Transcript of March 20, 2023 Hearing ("Tr.")]. On the record at the hearing, counsel for MDI admitted that Aquila is "entitled to access" the records at issue. Tr. at 19:16–18. The Court then ordered MDI immediately to direct Iron Mountain either (1) to make a copy of the records in issue, provide the originals to Aquila, and provide the copy to MDI, or (2) send the original records to Aquila, which must then make a copy of the records and provide the copy to MDI. Tr. at 23:1–6. The Court further ordered that, in lieu of any bond requested by MDI in connection with the temporary restraining order, Aquila must pay $2,113 in expenses to Iron Mountain. Tr. at 22:22.

## II.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The four boxes of records that Aquila seeks are Aquila's property. *See* February 22, 2023 Email Exchange at 1; February 27, 2023 Letter at 2; Tr. at 19:16–18; *see also* Tr. at 4:17–19 (Aquila's counsel explaining that "the invoices on all of this are addressed to Aquila and the customer name on those invoices is Aquila Air Capital").

2. Before Aquila terminated the relationship with MDI, Aquila "had access" to the records. Tr. at 4:17.

3. MDI instructed Iron Mountain to prohibit Aquila from accessing Aquila's records. *See* Tr. at 13:4, 22:24–25.

4. Section 5(c) of the Services Agreement requires MDI to return "all of [Aquila's] property" to Aquila "[u]pon the termination" of the relationship between MDI and Aquila.  Services Agreement § 5(c).

5. MDI acknowledged in the Services Agreement that "a violation of Section[] 5 . . . would cause immediate and irreparable harm to [Aquila] for which money damages would be inadequate."  Services Agreement § 13.

6. The historical repair records at issue are "irreplaceable," and losing access to the records renders "a $4 million engine . . . useless."  Tr. at 10:8, 11:11–12.

7. Counsel for MDI has represented to this Court that MDI may become insolvent [ECF No 39 at 57:23].

8. Aquila has met its burden to obtain preliminary relief by showing: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of preliminary relief.  *See Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015); Fed. R. Civ. P. 65(a).

9. Aquila has shown a likelihood of success on the merits of its claim for breach of Section 5(c) of the Services Agreement because MDI failed to return Aquila's records and, instead, cut off Aquila's access to the records after Aquila terminated its relationship with MDI.

10. Aquila has shown a likelihood of success on the merits of its claim for conversion because MDI exercised "unauthorized dominion over [Aquila's records] in interference with" Aquila's right to possess the records.  *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997); *see also JLM COUTURE, INC. v. HAYLEY PAIGE GUTMAN*, No. 20-cv-10575 (LTS-SLC), 2023 WL 2503432, at *9 (S.D.N.Y. Mar. 14, 2023).

4

11. Aquila has shown a likelihood of irreparable harm. MDI's contractual stipulation in the Services Agreement that failure to return Aquila's property constitutes irreparable harm is not sufficient, standing alone, but it is a "factor that must be considered." *Markovits v. Venture Info Cap., Inc.*, 129 F. Supp. 2d 647 (S.D.N.Y. 2001); *see also N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999). In concluding that Aquila has met its burden to show a likelihood of irreparable harm absent preliminary relief, the Court considers MDI's contractual stipulation together with both the fact that loss of the records renders a $4 million engine useless to Aquila, and MDI's representation that it may become insolvent before the end of this case and, therefore, would not be in a position to compensate Aquila at the end of this case.

12. Aquila has shown that the balance of equities and the public interest tip in Aquila's favor. There is nothing equitable about allowing MDI to hold Aquila's records hostage. The public interest is served when companies have access to their own property.

13. Given that the Court directed Aquila to pay Iron Mountain, MDI is not entitled to any additional security under Rule 65(c) of the Federal Rules of Civil Procedure. It does not cost MDI anything to make a phone call and reverse its own prior instruction to Iron Mountain to prohibit Aquila from accessing Aquila's records. MDI has not shown that MDI would be harmed by turning over the record, and, therefore it is not entitled to security against such harm.

### III.   CONCLUSION

For the reasons set forth above, as well as all of the reasons the Court stated on the record at the March 20, 2023 hearing, the Court GRANTED the motion of Aquila for a temporary restraining order directing MDI to restore Aquila's access to its records. Accordingly, IT IS

HEREBY ORDERED that, if MDI has not already done so, MDI must immediately direct Iron Mountain to send Aquila's records to:

> SeaTec Consulting
> C/O Robin Zarate
> 2901 Metro Drive, Suite 300
> Bloomington, MN 55425

IT IS FURTHER ORDERED that either Iron Mountain, or Aquila (via SeaTec or otherwise) must provide a copy of the records to MDI.  IT IS FURTHER ORDERED that, in lieu of any security pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, Aquila must immediately make a payment of $2,113 to Iron Mountain.

The parties are on notice that failure to comply with this Order may result in sanctions. The parties shall submit a joint status letter by March 31, 2023.

**SO ORDERED.**

**Date:  March 24, 2023**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**