UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  8/19/2024
```

MONOCOQUE DIVERSIFIED INTERESTS, LLC,

        Plaintiff,

-against-

AQUILA AIR CAPITAL (IRELAND) DAC,

        Defendant.

22-cv-10015 (MKV)

OPINION & ORDER
DENYING CROSS-MOTIONS
FOR SANCTIONS
AND
GRANTING MOTION
TO WITHDRAW

MARY KAY VYSKOCIL, United States District Judge:

Before the Court are the parties' cross-motions for sanctions [ECF Nos. 86, 95], as well as an unopposed motion by counsel for MDI to withdraw as counsel [ECF No. 102, 103, 104, 106]. For the reasons set forth below, both parties' motions for sanctions are DENIED. The motion to withdraw as counsel is GRANTED.

## I. BACKGROUND

The facts and procedural history of this case are described in detail in several prior decisions [ECF Nos. 58 ("PI Op."), 61 ("TRO"), 101 ("MTD Op.")]. The Court now summarizes only the points relevant to the pending cross-motions for sanctions.

### A. The Parties and the Services Agreement

Plaintiff Monocoque Diversified Interests, LLC ("MDI") is a small consulting firm that advises companies on the acquisition, leasing, and disposition of aircraft, aircraft engines, and other aircraft assets. MTD Op. at 1. Defendant Aquila Air Capital (Ireland) DAC ("Aquila") is a company that acquires, leases, and sells aircraft, aircraft engines, and other aircraft assets. MTD Op. at 1. Aquila engaged the services of MDI in an agreement dated August 25, 2021 [ECF No. 74-1 ("Services Agreement")].

1

The Services Agreement contains an audit provision. It provides that "[MDI] shall have the right no more than once per calendar year to engage a mutually agreed third party auditing firm to audit [Aquila's] books and records in respect of the Equipment at [MDI's] sole cost and expense." Services Agreement § 3(a).

On August 15, 2022, less than one year after the parties signed the Services Agreement, Aquila sent MDI a Notice of Termination [ECF No. 74-3], which would become effective on October 14, 2022. MTD Op. at 4. On October 12, 2022, two days before the effective date of termination, MDI sent Aquila a letter stating that MDI "had engaged" Weaver, an accounting firm, to conduct a forensic audit of Aquila's books and records [ECF No. 74 ("AC") ¶ 21]. MTD Op. at 5; *see* Audit Letter [ECF No. 74-4]. MDI also included a spreadsheet listing all of the information it was demanding. According to MDI, on October 14, 2022, Aquila "rejected . . . MDI's selection and engagement of Weaver" but stated that it would "agree to an audit being conducted by KPMG, Ernst & Young, PwC, or Deloitte." AC ¶ 22. Aquila also "objected to the scope of the audit noticed by MDI." AC ¶ 23.

B. Prior Proceedings

Shortly thereafter, in November 2022, MDI initiated this case by filing a Complaint [ECF No. 1], a motion for a preliminary injunction [ECF Nos. 4, 5], and a motion for expedited discovery and a hearing on its motion for a preliminary injunction [ECF Nos. 6, 7]. MDI alleged that Aquila had not paid everything it owed under the Services Agreement and was "interfering with MDI's contractual right to audit Aquila's books and records" [ECF No. 5 at 1]. MDI also alleged that Aquila was "interfering with MDI's business relationships" [ECF No. 5 at 1].

The Court granted in part and denied in part the request for expedited discovery and granted the request for a hearing [ECF No. 13]. In particular, the Court denied expedited discovery with

2

respect to the alleged breach of MDI's contractual audit right because any harm from the alleged breach could be compensated by money damages [ECF No. 13 at 3]. Nevertheless, MDI pressed its request for a preliminary injunction requiring Aquila to submit to an immediate forensic audit by MDI's unilaterally chosen auditor, among other relief [ECF No. 28-16; *see* ECF No. 20]. After holding the evidentiary hearing [ECF No. 39], the Court denied MDI's motion for a preliminary injunction in its entirety [ECF No. 58 ("PI Op.")].

The Court denied MDI's request for emergency relief with respect to the audit and directed the parties to "work together to engage an auditor to perform an audit within the scope of the audit right under the Services Agreement." PI Op. at 15. The Court also found that, at that stage, MDI had not offered any evidence showing that Aquila had done anything improper to interfere with MDI's business relationships or to disparage MDI. *See* PI Op. at 9–10.[1]

Thereafter, MDI filed the Amended Complaint, which is its operative pleading [ECF No. 74 ("AC")]. MDI asserted: several claims for breach of contract and quasicontractual claims based on alleged unpaid fees; a claim for breach of the audit provision; and contract and tort claims based on Aquila's alleged interference with MDI's business relationships. Aquila then filed a motion to dismiss [ECF Nos. 75, 76, 79, 80], which MDI opposed [ECF No. 78]. The Court granted in part and denied in part the motion to dismiss the Amended Complaint [ECF No. 101 ("MTD Op.")]. Pertinent here, the Court denied Aquila's motion to dismiss MDI's claim for breach of the audit provision. *See* MTD Op. at 24–25.

---

[1] While MDI's motion for a preliminary injunction was pending, Aquila sought a temporary restraining order against MDI [ECF Nos. 46, 47, 48]. Aquila argued MDI had directed a storage facility to deny Aquila access to Aquila's own business records. Aquila offered evidence that MDI had acknowledged that the records belonged to Aquila and had promised to restore Aquila's access to the records if Aquila paid certain fees [ECF No. 48-1 at 2; ECF No. 48-2 at 1]. After a hearing, the Court issued a Temporary Restraining Order directing MDI to restore Aquila's access to its own records [ECF No. 61 ("TRO")].

3

With respect to the audit, the Court explained that the Services Agreement clearly provides and "Aquila itself acknowledges" that MDI has a right to audit Aquila's books and records using a mutually agreed upon auditor. MTD Op. at 25. However, "[t]he audit still has not happened, and the parties remain locked in a dispute about who is to blame." MTD Op. at 25. As such, Aquila was not entitled to dismissal at the pleading stage. MTD Op. at 24.

C. **The Pending Motions for Sanctions and To Withdraw as Counsel for MDI**

While its motion to dismiss was under review, Aquila filed its pending motion for sanctions [ECF Nos. 86, 87 ("Aquila Mem."), 88 ("Simes Decl."), 94]. Aquila requests "both monetary and non-monetary sanctions" on both "MDI and its counsel," Mr. Richie. Aquila Mem. at 1. It seeks (1) the "fees and costs it was forced to expend" to defend against MDI's motion for a preliminary injunction "related to the audit," and (2) a declaration that "MDI has now forfeited its right to an audit." Aquila Mem. at 1.

Aquila contends that, in spite of its own diligent efforts to commence the audit, MDI has engaged in a pattern of unreasonable delays. *See* Aquila Mem. at 1, 4, 8. Aquila offers evidence that it has repeatedly contacted MDI, through counsel, to propose auditors and to urge MDI "to get the ball rolling." Simes Decl., Ex. 4; *see* Simes Decl., Exs. 1, 2, 3. Aquila represents that it proposed an auditor whom MDI later agreed to engage, Steven Hazel at FTI, but, even so, "MDI and its counsel have steadfastly refused to finalize the engagement of FTI." Aquila Mem. at 4. Aquila offers evidence that it has regularly reached out to MDI about beginning the audit, but MDI has either failed to respond or responded only that it was still working on the engagement letter. *See* Simes Decl., Ex. 5.

Aquila argues that the extensive delays in conducting the audit of its books and records demonstrate that MDI lacked a good-faith basis for seeking emergency relief with respect to the

4

audit at the outset of this case. *See* Aquila Mem. at 6–10. Aquila asserts that it "likely would not have sought" sanctions "based solely" on MDI's meritless motion for a preliminary injunction. Aquila Mem. at 10. However, "Aquila has now had to spend months chasing MDI and its counsel . . . to get MDI to do what it asked this Court to *order* nearly a year" before Aquila filed its motion for sanctions. Aquila Mem. at 10 (emphasis in original).

MDI filed a brief in opposition to Aquila's motion for sanctions [ECF No. 89 ("MDI Opp.")]. MDI maintains that the delays in commencing the audit have been caused by "Aquila proposing only audit firms which have conflicts due to their relationships with Aquila and its affiliates and related entities." MDI Opp. at 1. According to MDI, after it agreed to engage FTI, "[d]uring the negotiation process," MDI learned that FTI has a relationship with "the former law firm of Aquila's counsel, Mr. Simes," which firm "still represents Aquila in all matters, except for this litigation." MDI Opp. at 4. MDI argues that, instead of the Court declaring that MDI has forfeited its audit right, the Court should refer the parties to a magistrate judge or mediator about the selection of an auditor. MDI Opp. at 11–12.

MDI also filed a cross-motion for sanctions, which Aquila opposes [ECF Nos. 95, 96 ("MDI Mem."), 97 ("Aquila Opp."), 98]. MDI's sole argument is that Aquila should not have moved for sanctions against MDI. *See* MDI Mem. at 1, 6. MDI seeks the fees and costs it incurred to defend against Aquila's motion for sanctions. MDI Mem. at 1.

Thereafter, counsel for MDI filed a motion to withdraw as counsel [ECF Nos. 102, 103 ("Counsel Mem."), 104 ("Richie Decl.")]. Counsel represent that "there has been a complete breakdown in the relationship" with MDI. Counsel Mem. at 1. In particular, according to MDI's counsel, MDI has "false[ly]" accused lead counsel Sheldon Richie and his firm of "accepting fees from auditors in order to steer MDI's business towards these auditors." Counsel Mem. at 3. Mr.

5

Richie represents that he and his firm have withdrawn as counsel for MDI in several other matters and submits court orders authorizing such withdrawal [ECF No. 104-2].

In his declaration in support of the motion to withdraw, Mr. Richie states: "Despite my countless attempts to communicate to MDI the necessity of compliance with the Court's orders and Rules of Civil Procedure, MDI will not authorize me to proceed." Richie Decl. ¶ 8. Mr. Richie also represents that he has repeatedly advised MDI to retain substitute counsel without a response. Richie Decl. ¶ 10. All counsel represent that MDI has failed to make payment for outstanding invoices and they are asserting retaining liens against MDI. *See* Counsel Mem. at 5; Richie Decl. ¶ 12 [ECF Nos. 103-2, 103-4].

Aquila does not oppose the motion to withdraw as counsel [ECF No. 105]. Aquila did, however, file a brief asserting that the motion to withdraw shows that MDI is responsible for the delay in conducting the audit of Aquila's books and records [ECF No. 105 at 2]. It "acknowledges the possibility" that MDI but "not its counsel" is to blame [ECF No. 105 at 2].

Counsel for MDI filed a reply in which it "strenuously disputes" Aquila's assertion that the motion to withdraw shows that MDI is responsible for the delay in conducting the audit [ECF No. 106 at 1]. Counsel for MDI maintains that the breakdown in its relationship with MDI "does not change" that Aquila suggested nonviable auditors [ECF No. 106 at 1].

## II.    LEGAL STANDARDS

### A. Sanctions

A district court "has inherent power to sanction parties and their attorneys." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000). In addition, by statute, an attorney who "unreasonably and vexatiously . . . multiplies the proceedings" in a case "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred

because of such conduct." 28 U.S.C. § 1927. To impose sanctions pursuant to either its inherent power or Section 1927, a district court "must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)); *see Revson*, 221 F.3d at 78–79; *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986). Moreover, a district court has discretion to deny sanctions, even where wrongdoing has occurred. *See Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020).

### B. Withdrawal as Counsel

"It is well-settled that a court has 'considerable discretion in deciding a motion for withdrawal of counsel.'" *Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*, 2014 WL 1087934, at *1 (S.D.N.Y. Mar. 19, 2014) (quoting *SEC v. Pentagon Capital Mgt. PLC*, 2013 WL 5815374, at *4 (S.D.N.Y. Oct. 29, 2013)); *see Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999)). The court "must consider (1) the reasons for withdrawal, and (2) the impact of the withdrawal on the timing of the proceeding." *Mendez v. K&Y Peace Corp.*, 2017 WL 11808872, at *1 (S.D.N.Y. Sept. 27, 2017). The existence of irreconcilable differences between counsel and client may be a sufficient reason for withdrawal. *Farmer v. Hyde Your Eyes Optical, Inc.*, 60 F. Supp. 3d 441, 445 (S.D.N.Y. 2014). While non-payment of legal fees alone "is not usually a sufficient basis to permit an attorney to withdraw," *United States v. Parker*, 439 F.3d 81, 104 (2d Cir. 2006) (quoting *In re Albert*, 277 B.R. 38, 50 (Bankr. S.D.N.Y. 2002)), a "client's refusal to pay attorney's fees may constitute 'good cause' to withdraw" if "the client either 'deliberately disregarded' financial obligations or failed to cooperate with counsel," *United States v. Stein*, 488 F. Supp. 2d 370, 373 (S.D.N.Y. 2007) (quoting *McGuire v. Wilson*, 735 F. Supp. 83, 84 (S.D.N.Y. 1990)).

7

### III.    DISCUSSION

As explained below, the Court declines to impose any sanctions on MDI or its counsel, *see Yukos*, 977 F.3d at 235, and there is no basis to sanction Aquila. The Court grants the motion of counsel for MDI to withdraw.

#### A. The Court Declines To Impose Sanctions on MDI or Its Counsel.

Aquila has requested monetary sanctions on both MDI and its counsel in the amount of the fees and costs that Aquila incurred to defend against MDI's motion for emergency relief with respect to the audit. *See* Aquila Mem. at 1, 10. The gravamen of Aquila's argument is that the extreme (apparently ongoing) delay in commencing the audit after the Court denied MDI's motion demonstrates that there was never an emergency. *See* Aquila Mem. at 6–10. When it initially requested monetary sanctions, Aquila took the position that the Court should decide how to allocate the fees and costs "between MDI and its counsel." Aquila Mem. at 10. Now, Aquila suggests that MDI but not its counsel should be sanctioned [ECF No. 105 at 2].

The Court declines to impose the requested monetary sanctions on either MDI or its counsel. The Court has already agreed with Aquila that MDI was not entitled to a preliminary injunction. However, filing an unsuccessful motion, by itself, is not sanctionable conduct. *See Kim*, 884 F.3d at 106; *Revson*, 221 F.3d at 79. Indeed, Aquila volunteers that it "likely would not have sought" sanctions "based solely" on the motion. Aquila Mem. at 10.

To impose sanctions, the Court must find clear evidence that MDI and its counsel filed the motion for preliminary relief for an improper purpose, such as harassment or delay. *Kim*, 884 F.3d at 106. The Court, however, does not find that the subsequent delay in commencing the audit, however extreme, clearly establishes that MDI and its counsel were motivated by harassment or delay at the time they filed the motion for a preliminary injunction. In particular, MDI maintains

8

that selecting a mutually agreeable auditor remains the obstacle to conducting the audit.  *See* MDI Opp. at 1.  As noted above, when MDI moved for a preliminary injunction, it asked to Court to order Aquila to submit to an audit by MDI's chosen auditor [ECF No. 28-16].  The Court is not prepared to make a finding of bad faith by MDI and its counsel *at the time* they filed the motion for emergency relief based entirely on *subsequent* delays for which MDI has offered an explanation other than its own bad faith.

Aquila also requests a declaration that MDI has forfeited its audit right.  *See* Aquila Mem. at 1.  It stresses that "Aquila has now had to spend months chasing MDI and its counsel" to arrange for the audit MDI demanded.  Aquila Mem. at 10.  To be sure, Aquila offered evidence that MDI and its counsel have been dilatory.  *See* Simes Decl., Exs. 1, 2, 3, 4, 5.  MDI responds that Aquila has caused delays by proposing auditors with conflicts.  *See* MDI Opp. at 4.  The parties dispute whether the motion of counsel for MDI to withdraw vindicates Aquila's contention that MDI is to blame for the delay in conducting the audit [ECF No. 105, 106].  According to counsel for MDI, the client has accused counsel of wrongdoing in connection with selecting an auditor.  *See* Counsel Mem. at 3.  Lead counsel, Mr. Richie, also submitted a declaration stating that "MDI will not authorize [him] to proceed," Richie Decl. ¶ 8, but he does not specify that MDI would not authorize him to proceed with the audit, and he included identical language in at least one other motion to withdraw as counsel for MDI in another case [21-cv-965 (W.D.T.X.), ECF No. 63 ¶ 2 ("MDI will not authorize Counsel to proceed.")].  This record might suggest that MDI is causing delays, but it is too muddy to supply "clear evidence" of bad faith by MDI or its counsel in delaying the audit of Aquila's books and records.  *Kim*, 884 F.3d at 106; *see Revson*, 221 F.3d at 79.

Moreover, even if the Court were prepared to find wrongdoing by MDI and its counsel, the sanction Aquila requests is too severe.  In exercising its inherent authority to sanction parties and

attorneys, a district court must exercise its discretion to "fashion an appropriate sanction for conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). It would be an abuse of the Court's discretion effectively to dismiss MDI's potentially meritorious claim for breach of the audit provision of the Services Agreement without giving MDI any prior warning that it faced such a sanction. *See Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000); *Mackler Productions, Inc. v. Cohen*, 146 F.3d 126, 128 (2d Cir. 1998). Accordingly, the Court declines to declare that MDI has forfeited it audit right.

### B. There Is No Basis To Sanction Aquila.

Instead of merely opposing Aquila's motion for sanctions, MDI cross-moves for sanctions against Aquila. As MDI readily admits in its brief, the sole basis for MDI's sanctions motion is its contention that Aquila should not have moved for sanctions against MDI. *See* MDI Mem. at 1. MDI requests sanctions in the amount of the costs and fees it incurred to defend against the sanctions motion. However, as noted above, filing a single, unavailing motion is not sanctionable under either the Court's inherent power or Section 1927. *See Kim*, 884 F.3d at 106; *Revson*, 221 F.3d at 79. As such, there is no basis to sanction Aquila.

### C. The Court Grants the Motion of Counsel for MDI To Withdraw.

Counsel for MDI seek leave to withdraw, citing a complete breakdown in the relationship between counsel and client and non-payment of legal fees. *See* Counsel Mem. at 1–4. Neither MDI nor Aquila has filed an opposition, and the Court therefore relies on the uncontested representations of counsel for MDI in connection with this motion. The Court has considered both the cited reasons for withdrawal and the impact on the timing of the case. *See Mendez*, 2017 WL 11808872, at *1. The Court finds that the apparently irreconcilable differences between MDI and its counsel supports withdrawal. *See Farmer*, 60 F. Supp. 3d at 445. MDI's non-payment of legal

fees coupled with its refusal to communicate and cooperate with counsel also supports withdrawal. *See Stein*, 488 F. Supp. 2d at 373. The Court therefore grants the motion of counsel for MDI to withdraw, provided that current counsel (1) provides MDI with a copy of this Order, and (2) files an affidavit stating that they have done so by August 22, 2024.

MDI cannot proceed *pro se*. *See Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 191 (2d Cir. 2006). It "may appear in the federal courts only through licensed counsel." *Id.* at 192. As such, MDI must obtain new counsel, which must file a notice of appearance on the docket in this case by September 19, 2024. **MDI is on notice that failure to meet this deadline might result in dismissal of this action for failure to prosecute.**

The parties must file a joint status letter by September 26, 2024. If, after MDI obtains new counsel, the parties still cannot agree on an auditor, the parties must include in their joint letter a proposal for the Court or Magistrate Judge to select an auditor.

### IV.    CONCLUSION

For the reasons set forth above, the parties' cross-motions for sanctions are DENIED. The motion of counsel for MDI to withdraw as counsel is GRANTED.

The Clerk of Court respectfully is requested to terminate the motions pending at docket entries 86, 95, and 102.

**SO ORDERED.**

**Date: August 19, 2024**  
**New York, NY**

**MARY KAY VYSKOCIL**  
**United States District Judge**